
**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **FADI HUSSEIN SERHAN**<br>    Mazraa St., Jaafar Bldg.<br>    Beirut, Lebanon<br><br>                *Plaintiff,*<br><br>v.<br><br>**LISA PALLUCONI, in her official capacity as**<br>    **Acting Director of the United States**<br>    **Department of the Treasury,**<br>    **Office of Foreign Assets Control**<br>    1500 Pennsylvania Avenue, NW<br>    Freedman's Bank Building<br>    Washington, D.C. 20220<br><br>                *Defendant,*<br><br>and<br><br>**THE UNITED STATES DEPARTMENT**<br>**OF THE TREASURY, OFFICE OF FOREIGN**<br>**ASSETS CONTROL**<br>    1500 Pennsylvania Avenue, NW<br>    Freedman's Bank Building<br>    Washington, D.C. 20220<br><br>                *Defendant.* | Case No. 24-cv-3400<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

Plaintiff Fadi Hussein Serhan brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Acting Director, Lisa Palluconi, and in support of its complaint alleges the following:

**INTRODUCTION**

1. Fadi Hussein Serhan is a retired Lebanese citizen who formerly did business as a small local retailer of audio-visual equipment in Beirut. Serhan lived a modest life in Lebanon-neither involved in Lebanon's politics nor otherwise affiliated with any political grouping.

2. On November 5, 2015, Defendant OFAC designated Serhan pursuant to Executive Order ("E.O.") 13224 and identified him as a Specially Designated Global Terrorist ("SDGT") for allegedly providing services to Hizballah, an organization subject to U.S. sanctions.

3. Following a delisting matter in which Serhan was effectively barred from access to any of the factual allegations underlying his initial designation, Defendant OFAC denied Serhan's delisting petition and re-designated him for allegedly having sold certain audio-visual equipment to Al Manar TV, a television network in Lebanon alleged to be affiliated with Hizballah.

4. The factual basis for this denial and re-designation was that Serhan had sold certain audio-visual equipment to Al Manar TV, which was itself subject to sanctions pursuant to E.O. 13224. Far from being a "Hizballah procurement agent," as Serhan's submissions to OFAC made clear, Serhan operated a small retail shop of audio-visual equipment that sold such equipment to retail customers including those working for television networks and shows in Lebanon.

5. Following his initial designation, Serhan took substantial remedial actions, including dissolving Vatech SARL, his company; transparently providing OFAC with the records of sales made by Vatech SARL to Al Manar TV; terminating any relationship, business or otherwise, with Al Manar TV or any other Hizballah-affiliated parties; and retiring from business altogether. Serhan has done so to conform his conduct to U.S. sanctions policy objectives and to change the circumstances that gave rise to his designation by Defendants. At every step, Serhan has done what OFAC has expected of him-all in the hopes of negating the basis for his continued

designation and achieving his removal from OFAC's List of Specially Designated Nationals and Blocked Persons ("SDN List").

6. Notwithstanding Serhan's efforts, Defendants have denied his multiple requests for rescission of his designation and removal from the SDN List, and indeed re-designated Serhan on August 5, 2019, OFAC designated Plaintiff under E.O. 13224, as amended, and the HIFPAA, and included his name on the SDN List. *See* 84 Fed. Reg. 39,394 (Aug. 9, 2019).

7. On July 5, 2023, Plaintiff again filed a petition for administrative reconsideration with the Defendants seeking the rescission of his designations and the removal of his name from the SDN List. In that petition, Plaintiff proposed several remedial measures which, if adopted, would negate the basis for his designations.

8. Since that time, Defendants have failed to adjudicate Plaintiff's petition for removal and have not otherwise sought any additional, clarifying, or corroborating information in connection with its review of Plaintiff's request. This is despite OFAC publishing guidance which states that the agency endeavors to send a questionnaire seeking such information within 90 days of the filing of a petition for administrative reconsideration.

9. Indeed, it has been over 15 months since Plaintiff petitioned Defendants for his delisting, and the Defendants have failed to engage with Plaintiff in connection with his petition for removal, despite attempts by Plaintiff to engage with Defendants on that matter.

10. By designating Plaintiff—and failing to timely adjudicate Plaintiff's petition for removal—Defendants have continued that severe harm to Plaintiff and his commercial, financial, and reputational interests that have gone unabated since the time of his initial designation. Defendants have exacerbated Plaintiff's ongoing harm by unreasonably delaying the adjudication of Plaintiff's petition for removal.

11. Accordingly, Plaintiff seeks this Court's intervention to enjoin Defendants from their unlawful maintenance of Plaintiff's designations, and refusal to process his petition for removal, or to compel Defendants to issue a determination as to Plaintiff's pending petition.

## JURISDICTION AND VENUE

12. This action arises under the International Emergency Economic Powers Act, 50 U.S.C. § 1701 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

13. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

14. Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b) and (e), as the Defendants reside in this District.

## THE PARTIES

15. Plaintiff is a Lebanese national and is and was at all times relevant herein resident at Mazraa St., Jaafar bldg., Beirut, Lebanon; Al-Dhour, Hussein Serhan House, Kfarkela, Lebanon; and Abdallah Al-Yafi St., Sara bldg., Beirut, Lebanon.

16. Plaintiff is sanctioned pursuant to E.O. 13224, as amended, and the HIFPAA, and his name is included on OFAC's SDN List.

17. Defendant OFAC is an administrative agency of the United States Department of the Treasury, located at 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. Defendant OFAC is responsible for maintaining and administering the SDN List. This includes by placing persons on and removing persons from the SDN List consistent with E.O.

4

13224, as amended, the HIFPAA, and the implementing regulations located at 31 C.F.R. Parts 501, 594, and 566, the "Reporting, Procedures and Penalties Regulations," the "Global Terrorism Sanctions Regulations," and the "Hizballah Financial Sanctions Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff under E.O. 13224, as amended, and the HIFPAA, and is responsible for adjudicating Plaintiff's delisting petition.

18.    Defendant Lisa Palluconi is the Acting Director of OFAC. In this role, Defendant Lisa Palluconi is responsible for overseeing and directing OFAC's operations, including the adjudication of delisting requests. Defendant Lisa Palluconi is sued in her official capacity.

## FACTUAL ALLEGATIONS

### A.    OFAC's Initial Designation of Fadi Hussein Serhan

19.    On November 5, 2015, OFAC designated Serhan as Specially Designated Global Terrorist pursuant to E.O. 13224 for allegedly providing support or services to Hizballah.

20.    According to OFAC, Serhan was designated for his role as a purported "Hizballah procurement agent," as he was alleged—in his capacity as General Manager of Vatech SARL—to have purchased sensitive technology and equipment for Hizballah, including unmanned aerial vehicles and accessories and other equipment from companies in the United States, Europe, Asia, and the Middle East.

21.    As a result of his designation, Serhan's name was incorporated into OFAC's SDN List, and all property in which he had an interest that was or came within the United States was blocked. In addition, U.S. persons were prohibited from engaging in transactions or dealings with him absent an applicable statutory exemption or a license issued by OFAC. Moreover, foreign persons who engaged in certain transactions or dealings with him were themselves subject to designation under E.O. 13224.

    **B.    OFAC's Re-Designation of Serhan Under E.O. 13224 and the HIFPAA and Denial of Second Petition for Administrative Reconsideration**

22.    On March 18, 2019, Serhan filed a civil complaint against OFAC and its Director, alleging *inter alia* violations of the Administrative Procedure Act ("APA"). Prior to answering the complaint or filing a dispositive motion, OFAC notified Serhan that it had unilaterally decided to re-open the delisting matter.

23.    On July 3, 2019, OFAC notified Serhan that—following its re-opening of the delisting matter—OFAC had come to a preliminary determination that would involve rescinding Serhan's designation under E.O. 13224 and re-designating him under E.O. 13224 "for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of Al Manar." *Id*. In addition, OFAC stated that it intended to designate Serhan under the HIFPAA "for knowingly providing significant financial, material, or technological support for or to Al Manar." *Id*.

24.    On July 3, 2019, OFAC disclosed a Summary of Preliminary Conclusions setting forth the basis for its intended re-designation action. This Summary of Preliminary Conclusions alleged the following in support of OFAC's intended re-designation action:

- Serhan "voluntarily disclosed to OFAC that he engaged in transactions with AL MANAR through his company VATECH SARL," including that Vatech SARL had "previously sold audio/video equipment to the [AL-MANAR] TV network." Serhan had also acknowledged that Al Manar TV "is affiliated with HIZBALLAH and [AL MANAR] itself was designated as an SDGT pursuant to E.O. 13224 . . ." *Id*.

- Serhan "acknowledged that The Daily Star, a Lebanese news outlet, published an article on November 7, 2015, alleging that his company, VATECH SARL,

'sells recording and production equipment to major Lebanese TV channels," including Al Manar TV. Serhan "maintained that he did not know or have reason to know 'that [AL MANAR] was designated under E.O. 13224 for its alleged affiliation with Hizballah." *Id.*

- Serhan "provided OFAC with sales records for audio/visual equipment sold to AL-MANAR from January 1, 2009 to February 28, 2018 for equipment sales that occurred from January 9, 2009 to April 12, 2016." Vatech SARL "records and invoices reveal that prior to January 9, 2009, SERHAN, through VATECH SARL, sold at least $27,201.38 worth of audio, video, and related equipment to AL MANAR, as on January 9, 2009, AL MANAR still owed SERHAN $27,201.38 from outstanding unpaid invoices." Between January 9, 2009 to April 12, 2016, Serhan "sold at least $485,968.20 and €25,050 worth of equipment to AL MANAR." *Id*.

- "[T]he information provided by SERHAN to OFAC clearly demonstrates that [Serhan] continued to conduct business with AL MANAR after his and VATECH SARL's November 5, 2015 designation," including $1,300 in sales of additional equipment to AL MANAR and acceptance of $18,958.06 from AL MANAR as payment for prior outstanding invoices." *Id*.

- OFAC "assesses that given the nature and significant quantity of audio and video equipment sold by SERHAN to AL-MANAR, that SERHAN continues to provide material support to or in support of AL-MANAR, as the audio and video equipment SERHAN provided is likely still in use by AL-MANAR." *Id*.

7

- OFAC assessed that "even if SERHAN did not know AL-MANAR's designation status at a time when AL-MANAR openly affiliated with HIZBALLAH, it was unreasonable for him not to have known, especially since AL-MANAR had appeared on the SDN List since 2006." *Id*.

- Serhan's claim that Vatech SARL "is in the process of liquidation does not prima facie denote its irrevocable dissolution," as—as of June 7, 2019—Vatech SARL "continues to have an operational website and physical location, which is advertised as open from 8am to 6pm Monday through Friday." Moreover, Vatech SARL "continues to exhibit the ability to sell media equipment, evidenced by its catalogue being available on the website and potential clients having the ability to place merchandise in the online cart and make a 'wishlist.'" OFAC "has been unable to locate any information indicating that VATECH SARL is actually liquidated and no longer in existence." *Id*.

- "Serhan's willingness to provide support to AL MANAR after his designation and his purported lack of due diligence undermine . . . his contention that he can no longer support AL-MANAR because he does not have a controlling interest in VATECH SARL." According to OFAC, Serhan's failure to engage in basic sanctions compliance "undermines his overall credibility and erodes the believability that he no longer supports AL-MANAR." For this reason, "OFAC has reason to believe that SERHAN continues to support AL-MANAR, and the alleged dissolution of VATECH SARL, as well as his purported dissociation from the company, does not establish his inability to do so through other means." *Id*.

25. On August 5, 2019, OFAC formally rescinded Serhan's initial designation under E.O. 13224 for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Hizballah. OFAC further simultaneously re-designated Serhan pursuant to E.O. 13224 for assisting in, sponsoring, or providing financial, material, or technological support for, or financial or other services to or in support of, Al Manar TV. 84 Fed. Reg. 39,394 (Aug. 9, 2019). In addition, OFAC designated Serhan under the HIFPA for knowingly providing significant financial, material, or technological support for or to Al Manar TV. *Id*.

26. Simultaneous with its re-designation action, OFAC disclosed a new evidentiary memorandum—Case ID SDGT-16400—in support of its new designations of Serhan. The basis for the re-designation action replicated the factual allegations set forth in the Summary of Preliminary Conclusions.

27. On November 26, 2020, Serhan submitted a second petition for administrative reconsideration to OFAC seeking the rescission of his re-designation pursuant to E.O. 13224 and the HIFPA and the removal of his name from the SDN List. That petition asserted a change in circumstances underlying the basis of Plaintiff's designation.

28. On December 9, 2021, OFAC sent a letter to Serhan's counsel, stating that it "ha[d] determined that [Serhan] ha[s] not submitted arguments or evidence establishing that an insufficient basis exists for [Serhan's] designation and that the circumstances underlying his re-designation are no longer applicable." OFAC further stated that Serhan's "activities and statements have undermined his credibility, insofar as he has provided inconsistent and contradictory responses to OFAC requests for information and attempted to minimize or dismiss his individual responsibility to comply with OFAC's sanctions regulations." *Id*. OFAC concluded that,

"[o]verall, the evidence in the record does not establish that [Serhan] will not continue to provide support to Al Manar TV." *Id*.

### C.     Plaintiff's July 5, 2023 Delisting Request

29.     OFAC administers regulatory procedures by which persons blocked pursuant to its regulations and identified on the SDN List may seek their removal from the SDN List. *See* 31 C.F.R. § 501.807. OFAC's delisting procedures allow interested parties to request reconsideration of their designations by arguing that there is an insufficient basis for the designation; assert that the circumstances resulting in the designation no longer apply; and/or propose remedial measures that they believe would negate the basis of the designation, if adopted. *Id*.

30.     OFAC has also provided guidance for persons seeking delisting. U.S. Dep't of the Treasury, Filing a Petition for Removal from an OFAC List, https://home.treasury.gov/policy-issues/financial-sanctions/specially-designated-nationals-list-sdn-list/filing-a-petition-for-removal-from-an-ofac-list/. OFAC's guidance states that "the ultimate goal of sanctions is not to punish, but to bring about a positive change in behavior." *Id*. This guidance also offers examples of situations in which a delisting would be warranted, including "a positive change in behavior" or when "the basis of [a] designation no longer exists." *Id*.

31.     On July 5, 2023, Plaintiff submitted a petition for administrative reconsideration to OFAC seeking the rescission of his designations and the removal of his name from the SDN List. This petition was made pursuant to OFAC's delisting procedures set forth at 31 C.F.R. § 501.807. Plaintiff's delisting petition proposed remedial measures that he believes would negate the basis for his designation, if adopted.

32.     Specifically, Mr. Serhan's petition for administrative reconsideration proposed a terms of removal agreement—by which his re-designation would be rescinded and his name

removed from the SDN List—in exchange for adopt the following remedial measures which, if adopted, would negate the basis of his designation:

- Withholding any claims that he may raise through litigation arising from OFAC's denial of his November 27, 2020 Request for Removal from the SDN List;

- Provision of a donation in the sum of $18,958.06, representing the total amount received by Vatech SARL from Al Manar following his initial November 5, 2015 designation by OFAC, to a charity accepted by OFAC;

- Provision of an expert affidavit that any equipment sold by Vatech SARL to Al Manar should no longer be usable or operable;

- Agreement to provide documentation on an ongoing basis evidencing his current and sources; any entities that he owns or controls; all senior management positions, advisory roles, or board seats that he holds at the time of execution of a terms of removal agreement; the internal procedures, if any, on compliance with the laws and regulations administered by OFAC, as well as the name, title, phone numbers, email address, date of birth, physical address, and business units of the persons responsible for implementation of any compliance programs for any business or entity that he controls or has an ownership interest; all operational reports and documents, and a list of customer names for all businesses or entities that he controls or has an ownership interest;

- Agreement to disclose, for deposits equivalent to or greater than $1,000.00 USD contained on his financial statement, an explanatory narrative detailing the purpose of the funds and the name and contact information of the person sending the funds to him; all new sources of income on a monthly basis for a period of five years; the names of financial institutions that he uses for personal and business transactions; financial statements covering the

11

preceding twelve-month period that clearly documents and explains the source of his income and the purposes and uses of any entities that he owns or controls; if he intends to register, operate, be employed by, any business or entity, or otherwise be similarly affiliated with the management, administration, or operational activities of a business or entity; information on all transactions and all parties involved in any such transactions that he conducts or facilitates with a person who is identified on the SDN List or an entity that is owned or controlled by a person who is identified on the SDN List;

- Agreement to respond on an ongoing within 30 days to any inquiries from OFAC regarding sources of income not disclosed prior to the execution of a terms of removal agreement, as well as to any request for information from OFAC regarding his compliance with any terms of removal agreement or general compliance with U.S. sanctions laws;

- Provision of certifications, including ongoing certifications, that he is not currently engaged, and will not engage in the future, in any sanctionable dealings with any persons who are identified on the SDN List or otherwise subject to blocking sanctions, or any person who is owned or controlled by, or who acts for or on behalf of, any person who is identified on the SDN List or otherwise subject to blocking sanctions; that he is not corresponding or otherwise communicating with any person who is identified on the SDN List or is affiliated with Hizballah; that he is not in violation of, and will not engage in any violation of, any U.S. sanctions or anti-money laundering laws, Executive orders, and regulations administered by the United States Department of the Treasury and its offices and agencies; that he is not acting for or on behalf of any person on the SDN List or any entity that is owned or controlled by any such persons; and that Mr. he continues to adhere to the terms of removal agreement; and

- Agreement that, in the event of a breach of a terms of removal agreement, Mr. Serhan shall not contest any re-designation action arising from that breach for a three-year period.

### C.   OFAC's Delayed Adjudication

33. On July 10, 2023, five days after Plaintiff submitted his delisting petition to OFAC, OFAC confirmed that they had received the petition.

34. On August 8, 2023, over a month after Plaintiff submitted his delisting petition to OFAC, OFAC assured undersigned counsel that an adjudication was imminent.

35. On September 25, 2023, nearly three months after Plaintiff submitted his delisting petition to OFAC, undersigned counsel sought a status update regarding the delisting petition and received no response.

36. On April 26, 2024, nearly ten months after Plaintiff submitted his delisting petition to OFAC and over eight months after OFAC's last communication regarding Plaintiff's case, undersigned counsel sought a status update regarding the delisting petition.

37. On April 30, 2024, OFAC assured undersigned counsel that an adjudication of the delisting petition was imminent.

38. On July 12, 2024, over a year after Plaintiff submitted his delisting petition to OFAC, undersigned counsel sought a status update regarding the delisting petition and received no response.

### D.   Harm Suffered by Plaintiff

39. Defendants' designations of Plaintiff—and Defendants' failure to adjudicate Plaintiff's delisting petition—has caused substantial harm to Plaintiff personally, professionally, and financially, tarnishing his reputation and upending his ability to conduct basic transactions to support his livelihood.

40. Specifically, OFAC's allegation that Plaintiff is connected to Hizballah through Al Manar TV has resulted in the loss of commercial partnerships and business relationships. Further, the fact that Plaintiff's name remains on the SDN List has barred Plaintiff from accessing services offered by persons subject to U.S. jurisdiction, including financial institutions.

41. Plaintiff has faced, and continues to face, extensive difficulties sustaining his business endeavors, as banks, suppliers, and customers refrain from engaging in transactions with Plaintiff out of fear of their own sanctions exposure.

42. Plaintiff's ongoing suffering is a direct result of Defendants' failure to adjudicate Plaintiff's delisting petition and his continued designations under E.O 13224, as amended, and the HIPFAA.

## CAUSE OF ACTION

### COUNT I

DEFENDANTS' FAILURE TO RENDER A DECISION ON PLAINTIFF'S PETITION FOR REMOVAL CONSTITUTES UNREASONABLE DELAY UNDER THE ADMINISTRATIVE PROCEDURE ACT

43. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

44. The Administrative Procedure Act ("APA") requires agencies to "conclude a matter presented to it . . . [w]ith due regard for the convenience and necessity of the parties or their representatives within a reasonable time." 5 U.S.C. § 555(b).

45. Under the APA, reviewing courts are required to compel agency action unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

46. Defendants' failure to render a decision on Plaintiff's July 5, 2023 petition for removal constitutes unreasonable delay under the APA. Plaintiff will continue to suffer the

14

consequences of his designations so long as Defendants persist in refusing to render a final decision regarding his delisting petition.

### **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests that this Court:

A.   Order Defendants to promptly adjudicate Plaintiff's delisting petition;

B.   Grant an award to Plaintiff of his costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

C.   Grant such other and further relief as the Court may deem just and proper.

Dated: December 6, 2024

>                                Respectfully submitted,
>
>                                /s/ Erich C. Ferrari
>                                Erich C. Ferrari, Esq.
>                                Ferrari & Associates
>                                1455 Pennsylvania Ave., NW
>                                Suite 400
>                                Washington, D.C. 20004
>                                Telephone: (202) 280-6370
>                                Fax: (877) 448-4885
>                                Email: ferrari@falawpc.com
>                                D.C. Bar No. 978253
>
>                                *Attorney for Plaintiff*